**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| SHEILA J. MANLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13CV790 JAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Sheila Manley's ("Manley") application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 404-433.

**I.       Background**

On August 16, 2007, Manley protectively filed an application for supplemental security income benefits, alleging disability since August 1, 1998. (Tr. 189) The Social Security Administration ("SSA") denied Manley's application on November 29, 2007. (Tr. 103-07) She filed a timely request for a hearing before an administrative law judge ("ALJ") on January 7, 2008. (Tr. 109-11) Following a hearing on October 1, 2009 (Tr. 61-80), the ALJ issued a written decision on November 10, 2009, upholding the denial of benefits. (Tr. 83-97) Manley requested review of the ALJ's decision by the Appeals Council and on November 18, 2009, the Appeals Council remanded the case for further evaluation. (Tr. 98-102)

Manley appeared and testified at a hearing held on April 4, 2011. (Tr. 29-60) Following the hearing, the ALJ issued a written decision on December 28, 2011, finding Manley was not under a "disability." (Tr. 12-28) Mitchell again requested review of the ALJ's decision by the Appeals Council, which request was denied on February 25, 2013. (Tr. 1-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Manley filed this appeal on May 25, 2013. (Doc. No. 1) The Commissioner filed an Answer. (Doc. No. 11) Manley filed a brief in support of her complaint (Doc. No. 25) and the Commissioner filed a brief in support of the answer. (Doc. No. 30) Manley did not file a reply.

## II. Decision of the ALJ

The ALJ determined that Manley had not engaged in substantial gainful activity since August 16, 2007, the application date.[1] (Tr. 15) The ALJ found Manley had the severe impairments of major depressive disorder, anxiety disorder and avoidant personality disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

After considering the entire record, the ALJ determined Manley had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she would be limited to work that involved only simple, routine, and repetitive tasks. She would also require a low stress job, defined as requiring only

---

[1] "In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." SSR 83–20. Manley alleged she was disabled as of August 1, 1998, but she did not file her SSI application until August 16, 2007. (Tr. 189) For SSI cases, the relevant date of onset cannot be before the application for disability is filed. Keupp v. Astrue, 2012 WL 37499 (W.D. Mo. Jan. 9, 2012).

2

occasional decision-making, occasional changes in work setting, no interaction with the public, and only causal and infrequent contact with coworkers. (Tr. 17) The ALJ found Manley had no past relevant work but that there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 22) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 23)

Manley appeals, contending the RFC and credibility findings are not supported by substantial evidence. She also contends the ALJ failed to give proper weight to the opinions of her treating psychiatrist Georgia Jones, M.D. The Commissioner maintains that the ALJ's decision was supported by substantial evidence on the record as a whole.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

The ALJ held a hearing in this matter on April 4, 2011. (Tr. 31) Manley testified and was represented by counsel. Wilma Edwards, Manley's aunt, also testified at the hearing. (Tr. 55-59) Following the hearing, the ALJ submitted interrogatories to a vocational expert. (Tr. 265-274)

##### 1. Manley's testimony

At the time of the hearing, Manley was 36 years old. (Tr. 38) She was divorced and had joint custody of her three children, ages 13, 7 and 4. (Tr. 38) Her highest level of education was the eleventh grade. (Tr. 39) She was in special education classes from the first grade on. (Tr. 40) She had no vocational training. (Id.) Manley testified she has not worked since August 2007. (Tr. 40) She has never filed for unemployment benefits or claimed workers compensation. (Tr. 41) In 2000 Manley reported income of $1500 from a home-based mail order business selling vitamins. (Tr. 42) In 1998 she worked at a church day care for about a month. (Tr. 42-43) She quit because

3

she saw some things she didn't like, such as bad parenting. (Tr. 43-44) In 1996 Manley worked at a Taco Bell, preparing food and washing dishes. (Tr. 44) She did not like working the cash register. (Id.) She left that job when she got married. (Id.)

It was Manley's testimony that she doesn't deal very well with people. She feels uncomfortable and anxious when out in public, and believes people are staring at her and talking about her. (Tr. 45-46, 53) At times she stays up all night thinking about things and talking with her parents on the phone. (Tr. 46-47)

Manley has a driver's license and drives every day with no problem. (Tr. 39) She can grocery shop, but typically has someone go with her. (Tr. 46) Sometimes her mother comes to stay with her and help her, but she has no trouble taking care of things around her house or with her children. (Tr. 50) She does most of the household chores, including vacuuming, washing the dishes, and cooking. (Tr. 49, 51) She showers every day. (Tr. 51) She has no problems with alcohol or drugs. (Tr. 44-45) She likes to read or watch television. (Tr. 53)

Manley has seen Dr. Georgia Jones approximately every four weeks since 1997-98. (Tr. 48) Her prescription medications include Effexor,[2] Invega,[3] "Clozapine or something,"[4] and a sleeping pill. (Tr. 51-52; 259) Manley testified that sometimes she feels as if she doesn't need her medication but takes it anyway, and feels it helps her symptoms of sadness, depression, and crying spells. (Tr. 52) She can remember to take her medication on her own. (Tr. 52)

2. **Testimony of Wilma Edwards**

---

[2] Effexor (venlafaxine HCI) is prescribed to treat patients with depression and certain types of anxiety. https://www.effexorxr.com (last visited May 14, 2014)

[3] Invega is prescribed to treat certain mental/mood disorders. https://www.webmd.com/drugs (last visited May 14, 2014)

[4] Clozapine is an atypical antipsychotic medication that rebalances dopamine and serotonin to improve thinking, mood and behavior. http://www.naml.org. (last visited May 14, 2014)

4

Edwards testified that her niece cannot go places by herself, and that when she is in a crowd she feels as if she is being watched and talked about. (Tr. 56-57) She has issues with meeting new people and obsesses about small details. (Tr. 57-59)

Manley's parents are with her every week. (Tr. 57) Manley's mother stays with her at least one week out of the month because Manley is not stable. (Id.) Manley is on the phone with her parents all the time. (Id.) According to Edwards, Manley doesn't seem to be able to make a decision by herself. (Id.)

Based on her observations, Edwards believed Manley is able to take care of her own household chores and her children but relies on her parents for help. (Tr. 58) She is able to take her medications on her own but often needs reminders for medication and doctor's appointments. (Tr. 58-59) Manley has no social activities and stays mostly at home. (Tr. 59)

3. **Vocational Expert Interrogatories**

Subsequent to the hearing, the ALJ propounded interrogatories to a vocational expert, Stephen J. Dolan, M.A., C.R.C. (Tr. 265-274) The ALJ asked Dolan to assume an individual born on January 6, 1975, with limited education and no work experience within the past 15 years, and the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: is limited to work that involves only simple, routine and repetitive tasks in a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting with no interaction with the public and only casual and infrequent contact with co-workers. (Tr. 267) Based on this hypothetical, Dolan stated that Manley could perform the jobs of hand packager (920.587-018), with 9,000 jobs in Missouri and 900,000 jobs in the national economy; dishwasher (318.687.010), with 10,000 jobs in Missouri and 1,000,000 jobs in the national economy; and poultry eviscerator (525.687-074),

with 2,000 jobs in Missouri and 200,000 jobs in the national economy. (Tr. 273) Dolan stated these jobs were medium to light and unskilled with a SVP of 2. (Tr. 274)

    **B.    Medical Records**

The ALJ summarized Manley's medical records at Tr. 18-22. Relevant medical records are discussed as part of the analysis.

    **IV.    Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or

combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In her appeal of the Commissioner's decision, Manley makes the following arguments: (1) the ALJ's RFC finding is not supported by substantial evidence; (2) the ALJ failed to give controlling weight to the opinions of her treating physician Georgia Jones, M.D.; and (3) the ALJ improperly assessed the credibility of Manley's subjective allegations.

### A. Credibility

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Manley's credibility was essential to her determination of other issues, including Manley's RFC. See Shell v. Astrue, 2012 WL 2191282, at *6 (E.D. Mo. May 14, 2012) (citing Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.").

In evaluating a claimant's credibility, the ALJ is required to apply the factors from Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), which include the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). However, the ALJ may not discount a claimant's allegations of disabling pain simply because the objective medical evidence does not fully support those claims. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). When rejecting a claimant's complaints of pain, the ALJ must "detail the reasons for discrediting the

9

testimony and set forth the inconsistencies found." Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir.2005). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Manley claims the ALJ improperly evaluated her activities of daily living as supporting a light RFC, in that ability to do activities such as light housework provides little or no support for the finding that a claimant can perform full-time competitive work. (Doc. No. 25, p. 13) Manley argues the ALJ failed to reference where in the record the information on her daily activities was obtained. (Id.)

The Commissioner responds that the ALJ accurately summarized Manley's testimony from the April 2011 hearing, to-wit:

> Despite the claimant's mental impairments, she has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including performing most household chores alone, cooking full meals, taking care of her children, and performing all personal care without difficulties. The claimant also testified that she goes shopping but usually has someone go with her. She also reported that she is able to drive without difficulty and attend parent/teacher conferences. Some of the mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The undersigned finds the claimant's ability to participate in such activities diminishes the credibility of the claimant's allegations of disabling functional limitations.

(Doc. No. 30, pp. 5-6) Moreover, the ALJ is not required to pinpoint cite to the record, citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("the ALJ is not required to discuss every piece of evidence submitted."). (Id.)

Manley also argues that her need to take frequent breaks inhibits her ability to perform the full range of work as determined by the ALJ. (Doc. No. 25, p. 13) As noted by the Commissioner, Manley mischaracterizes her testimony. When asked within the context of her ability to maintain focus or concentration whether she ever stopped chores in the middle of them, Manley responded that she did, "[p]robably to go do something else." (Tr. 54) This is different

10

from restrictions in daily activities taken on medical advice. See e.g., Cagle v. Astrue, 2010 WL 1539111, at *7 (E.D. Mo. Mar. 30, 2010) ("A record, such as that in the matter under consideration, which does not reflect physician imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity.")

The ALJ identified other reasons for discounting Manley's credibility. First, Manley responded well to mental health treatment and reported only moderate or mild symptoms to her medical providers. (Tr. 19, 51-52, 330-344, 363-74, 391-402, 405-13, 429, 454-55, 468-69, 518-28) See Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("If an impairment can be controlled by medication or treatment, it cannot be considered disabling.")

Second, a review of Manley's work history showed she worked only sporadically prior to the alleged disability onset date, raising a question as to whether her continuing unemployment was actually due to a medical impairment as opposed to a lack of motivation to work. (Tr. 20, 40-44, 208-09, 214-16) See Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (claimant's "sporadic" work history prior to his alleged disability date "indicates that he was not strongly motivated to engage in meaningful productive activity even prior to the alleged onset of disability and weighs against his credibility in assigning reasons for not working.")

Finally, the ALJ found the objective medical evidence did not support Manley's allegations of disabling symptoms and limitations. While acknowledging Manley's history of psychological treatment with Georgia A. Jones, M.D., the ALJ found that despite this treatment, Dr. Jones indicated numerous times since the application date that Manley suffered no delusion, hallucinations, thought disturbances, or suicidal or homicidal ideations. (Tr. 391-402; 406-413; 468-69) During a mental examination in December 2009, Dr. Jones noted Manley was oriented to time, place and person, had appropriate behavior and was cooperative, and had normal speech,

with logical and lineal thought content. (Tr. 408) A second psychological assessment conducted by Dr. Kate Edwards on December 9, 2009 reported that Manley presented with a mild level of sadness and a moderate level of anxiety. (Tr. 429) Treatment notes dated March 22, 2010 noted Manley's depression was "stable." (Tr. 528) Manley has challenged none of these factors.

Upon review, the Court finds and concludes that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

### B. RFC finding

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. See Voegtlin v. Colvin, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing McCoy v. Astrue, 648 F.3d 605 (8th Cir.2011)). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski, 739 F.2d at 1322; 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir.2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir.2000).

Manley argues the ALJ did not consider any of her physical limitations following a motor vehicle accident in 2009. (Doc. No. 25, p. 9) In addition, she claims problems with her ankle going back to 2007. (Id.) Lastly, Manley argues that given her need to take frequent breaks, she cannot perform the full range of work as determined by the ALJ. (Id.)

12

The Commissioner responds that the ALJ specifically analyzed the record pertaining to Manley's motor vehicle accident, and found she had recovered from her accident within three months with no resulting residual physical limitations. (Doc. No. 30, pp. 13-14) In order to be considered "severe," an impairment or a combination of impairments must have lasted, or be expected to last, for a continuous period of at least 12 months, or must be expected to result in death. See 20 CFR 416.909 and 419.920. The medical records relied on by Manley pertain only to her period of recovery in December 2009, when the accident occurred. (See Tr. 414, 427-30, 432-36) As pointed out by the Commissioner, Manley did not seek treatment for accident-related injuries after February 2010 (Tr. 15, 414-528), and fails to articulate what physical limitations she has had in the years following her motor vehicle accident. (See id.)

Manley argues "there is no consultative examination in the record after the date of the accident" (Doc. No. 25, p. 9), however the ALJ was not required to order a consultative examination to determine Manley's physical functioning when the record showed she had recovered from her injuries. See 20 C.F.R. § 416.919a(b); Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.").

Manley injured her left ankle in 2004, which she stated was treated non-surgically with a cast. (Tr. 33, 352) The Commissioner notes the lack of any post-2004 diagnostic reports or imaging substantiating Manley's claim of ankle pain, and that Manley was not treated for ankle pain since 2004. (Tr. 19, 219, 234, 329, 352) See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the

ALJ's decision to deny benefits."). Further, the record showed Manley had normal strength and ranges of motion in the ankle and a normal gait. (Tr. 353, 354, 355, 357, 493, 497) Accordingly, the ALJ properly omitted limitations due to ankle pain from the RFC. (Tr. 19)

Finally, Manley asserts the RFC should have included frequent breaks. As discussed above, Manley did not testify that she needed to take frequent breaks and there is no medical support for this argument.

On remand, the ALJ was directed to proceed to the fifth step of the sequential evaluation process and, if warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Manley's occupational base. (Tr. 101) The Court finds the ALJ posed a proper hypothetical to the vocational expert based on Manley's credible limitations. "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." Goff, 421 F.3d at 794 (quoting Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir.2001)). See also Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir.1999) (holding an ALJ need not include additional complaints in the hypothetical not supported by substantial evidence). "A vocational expert's testimony 'based on a properly phrased hypothetical question constitutes substantial evidence.' " Id. Therefore, the Court finds and concludes that the ALJ's RFC determination is supported by substantial evidence in the record as a whole.

### C. Medical opinions

Manley argues the ALJ failed to give controlling weight to the opinions of her treating psychiatrist Dr. Georgia Jones. (Doc. No. 25, pp. 9-12) The ALJ acknowledged Manley's long treatment history with Dr. Jones. (Tr. 19) Dr. Jones diagnosed Manley with depressive disorder

with psychotic features and agoraphobia since 2006. She has prescribed Effexor, Risperdal[5] and Klonopin[6] for Manley, who has always been compliant with her medications. (Tr. 284-344, 391-402, 405-413, 468-469, 517) Dr. Jones opined Manley would have "poor to none" ability to relate to co-workers, deal with the public, deal with work stresses; behave in an emotionally stable manner; related predictably in social situations; and demonstrate reliability. (Tr. 403-04)

The ALJ considered the "Medical Assessment of Ability to Do Work Related Activities (Mental)" completed by Dr. Jones on September 24, 2009 (Tr. 403-04) and her April 14, 2011 letter stating that Manley still suffered from a chronic condition. (Tr. 517) The ALJ discounted this evidence as unsupported by any objective evidence and inconsistent with Dr. Jones' treatment notes after the application date showing that Manley did not exhibit paranoia or delusions. (Tr. 20) The ALJ observed that Dr. Jones had relied heavily on Manley's subjective reports of symptoms and limitations, and accepted as true most, if not all, of what Manley reported. (Id.) This is a valid basis for discounting a treating source's opinion. See Samons v. Astrue, 497 F.3d 813, 819 (8th Cir.2007) (ALJ entitled to discount the opinion of a treating physician when that opinion is conclusory or inconsistent with the evidence of record); Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir.2012) (ALJ properly gave treating physician's opinion noncontrolling weight when that opinion was largely based on claimant's subjective complaints); Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir.2007) (ALJ entitled to discount treating physician's statements regarding claimant's limitations because such conclusion was based primarily on claimant's subjective complaints and not medical evidence).

---

[5] Risperdal is prescribed for the treatment of acute manic or mixed episodes associated with bipolar disorder. http://www.rxlist.com/risperdal-drug/indications-dosage.htm. (Last visited May 14, 2014)

[6] Klonopin is prescribed for the treatment of panic disorder, with or without agoraphobia, as defined is DSM-IV. http://www.rxlist.com/klonopin-drug/indications-dosage.htm. (Last visited May 14, 2014).

While a treating physician's opinion is generally entitled to substantial weight, such an "opinion does not automatically control in the face of other credible evidence on the record that detracts from that opinion." Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 880 (8th Cir.2009) (internal quotations and citation omitted). "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." Heino, 578 F.3d at 879 (internal quotations and citations omitted). See also Halverson v. Astrue, 600 F.3d 922, 929–30 (8th Cir. 2010) ("When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.") (internal quotation and citation omitted).

Here, the ALJ afforded substantial weight to the findings and opinions from consultative examiner Joseph M. Long, M.D., because they were consistent with the record. (Tr. 21) On November 8, 2008, Dr. Long conducted a consultative psychological evaluation of Manley. (Tr. 378-380) Dr. Long found no evidence of gross impairment of psychological functioning due to hallucinations, delusional ideation, or extreme emotional lability. (Tr. 378) He reported an affect that was anxious, dysphoric and restrained, and a conflicted thought process that was essentially logical and coherent. (Tr. 379) Dr. Long diagnosed Manley with dysthymic disorder, anxiety disorder with features of panic and social phobia, learning disorder (by history) and avoidant personality disorder. (Tr. 380) Manley's ability to understand and remember instructions was seen as no more than mildly impaired, and her ability to sustain concentration and persist with tasks no more than moderately impaired. (Id.) Social and adaptive functioning was seen as moderately to markedly impaired; however, the ALJ found, after listening to Manley's

16

testimony, that her limitations in the area of social functioning were more moderate than marked. (Id.) Thus, the Court finds the ALJ properly weighed the medical opinions of record.

   VI.   **Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSSED** with prejudice. A separate judgment will accompany this Order.

Dated this 29th day of September, 2014.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**